ABRAHAM V. VAN FLEET AND JOHN T. BIRD, ESQS.,
VICE-CHANCELLORS.

## MARIA C. HENDRICKSON

*v.*

## SAMUEL T. HENDRICKSON et al.

Complainant's father held a written agreement for the purchase of certain lands, and paid the vendor part of the purchase-money. He died before completing the purchase, and his estate was insufficient to do so. Two of his sons, Samuel and James, afterwards bought the property, and paid therefor, after repaying to their father's estate the amount which he had paid upon the consideration. Complainant and several of her brothers and sisters were then infants.—*Held*, (1) that complainant and decedent's other heirs-at-law were not, in equity, tenants in common with Samuel and James in the property; (2) that the father's equitable interest in the lands under his contract was not salable, under an order of the orphans court to pay his debts or the balance of the purchase-money due from him.

375

Bill for relief.   On final hearing on pleadings and proofs.

*Mr. J. D. Bedle*, for complainant.

*Mr. H. M. Nevius*, for defendants.

THE CHANCELLOR.

The object of this suit is to obtain, for the complainant, one-sixth of certain property known as the Globe Hotel property, in Red Bank, in this state, including a lot once used for a stable, situate upon the opposite side of the street from that on which the hotel building is situated ; and also to obtain a decree awarding to her the like proportion of the rents and profits of the property from May 9th, 1849, the date of the death of Tobias S. Hendrickson, the father of the parties, who was, at his death, in possession of the premises under an agreement of sale. On the 1st of February, 1849, about three months preceding his death, Tobias S. Hendrickson entered into a written agreement with Selden M. Pratt, of Connecticut, then the owner of the property, for the purchase of it.   The price which he agreed to pay appears to have been $3,000, besides the amount of an encumbrance held by Charles Haight upon the stable lot.   The agreement is somewhat ambiguous on the subject of the price. He paid off that encumbrance, which amounted to $420.36.   By the terms of the agreement he was to pay $800 or $1,000 in one year from the 1st of April, 1849, and on making that payment was to have a deed for the property, and was to give a bond and mortgage for the balance of the purchase-money.   He was to have possession of the property at once, and to pay interest upon the $3,000 up to the time of receiving the deed.   He had been in possession of the premises as tenant under Pratt for the year preceding the purchase.   There would be due upon the agreement April 1st, 1850, the sum of $800 or $1,000, with interest. Mr. Hendrickson died intestate.   He left $843.47 of personal estate, and his debts, irrespective of that which was created by the agreement, amounted to $403.20, not including therein $200 lent to him by his son Samuel to enable him to pay off the

Haight encumbrance. He left no other property, except a wood lot, which, at that time, was of but little value, and was, seventeen years afterwards, sold by his heirs for $50. A large part of the personal property consisted of his household furniture. He left a widow and seven children, of whom two, Samuel T. and James H., were of age (the former was then about twenty-five years old, and the latter past twenty-one), and his daughter Alchey E., though under age, was married. The other children were Tobias C., David W., Peter J. and Maria C., the complainant. Tobias was about seventeen years old, David about fifteen, Peter about nine, and Maria about six. It was manifestly impossible to complete the purchase of the hotel property out of his estate. After paying his debts, not including the debt of $200 to Samuel, there would have been a balance of only about $400. The widow and Samuel, the oldest son, took out letters of administration. On the day upon which they filed the inventory, at Freehold, the attorney of Pratt spoke to Samuel there about the property, and urged that he and James should buy it, but Samuel declined. After his return home, he and James had a conversation with their mother upon the subject, in which she urged them to purchase the property, in order to keep a home for her and the younger children, so that the children might not be scattered, as they otherwise must be; and she promised that if they would do so, she would keep house for them there. They considered the matter for two or three weeks, and then, upon the advice of their friends, made an agreement with Pratt's agent to buy the property at the price at which it was sold to their father, $3,420, but upon more accommodating terms of payment. They were to pay interest upon the purchase-money, and to pay the principal as fast as they could; the agent promising that Pratt would assist them (by giving time), and their friends promising to aid them, if necessary, by lending them money. They were to have a deed for the property on paying $1,000, and were then to give a mortgage for the balance of the purchase-money. After the bargain was made, the administrators added to the inventory the $420.38, which had been paid by Tobias S. Hendrickson on account of the property. By deed of September

15th, 1850, Pratt conveyed the property to Samuel and James. They then paid $1,000 on account of the purchase-money, and gave a mortgage for the rest, $2,000. Samuel swears that at his father's death he had of his own money $880, all of which he put into the property. The $2,000, the payment of which the mortgage was given to secure, were paid by Samuel and James as follows: $500 in September, 1851; $500 in May, 1852, and $1,000 in September, in that year. The family lived in the hotel (it being kept by Samuel and James, who supported the family there) up to 1856, when the mother removed to another house near by belonging to Samuel and James. In 1867 Samuel and James made a division of some of the property which they held together as tenants in common, and in that division Samuel conveyed his interest in the hotel property, except the stable lot, to James. They had, it may be remarked, made very extensive additions to the property, both in land and buildings. The bill in this case was not filed until August 23d, 1884, thirty-four years after the conveyance of the property by Pratt to Samuel and James, and twenty years after the complainant attained to her majority. In 1883 she called the administrators to an account in the orphans court for their administration. In that account they were charged with the household goods contained in the inventory, although part of them had been taken by members of the family, including the complainant herself, and the rest had been used up by the family while living together with the mother. The result of the accounting was that it was decreed that they were liable to pay a balance of $277.98. All of the family, except the complainant, voluntarily released them from payment of any part of the balance. The complainant's share thereof, with interest, was tendered to her, but she refused to receive it. The administration, however, is not involved in this case which has reference only to the claim of the complainant to the hotel property.

The claim is founded, in the first place, upon the allegation that Samuel and James were, in equity, tenants in common of the hotel property with the complainant, and that in taking the title thereto they, in equity, took it in trust for her to the extent

of one-seventh part thereof, and that she is entitled to that share, and to an account of the rents and profits in this court, out of her share of which her proportion of the purchase-money is to be paid. The claim cannot be supported. It is clear, from the evidence, that, as before stated, the heirs of Tobias S. Hendrickson were unable to complete the purchase which he had made, and if Samuel and James had not taken the property the money paid by their father on account of it would have been lost to the estate, and Pratt would have been free to sell to any one else. Samuel and James not only did not seek to take any advantage of the complainant and her brothers and sister, but they were reluctant to take the property at all, and it was only upon the urgency of Pratt's agent and their mother and friends of the family that they were induced to buy it, and it appears they were led to that determination, not so much by hopes of gain as by a desire to benefit their mother and the younger children by keeping a home for them, and providing for them until the children could take care of themselves. It will not be out of place to add that it appears that in all things they discharged, with commendable generosity and to the full, their duty in the premises. The kinship between them and their brothers and sisters did not create a fiduciary relation in the purchase. The heirs of Tobias S. Hendrickson did not, upon his death, become tenants in common of the property. As such heirs, they had a right to have a conveyance of the property to them upon their complying with the terms of sale. It being impossible for the other heirs to comply with those terms, Samuel and James were as much at liberty to buy the property for themselves as a stranger would have been. In view of the circumstances of the other heirs, the contract between Pratt and Tobias S. Hendrickson was properly held by Pratt and Samuel and James to be at an end, and Pratt was at liberty to sell the property again, and they or anybody else was at liberty to buy it.

It may be added that both Samuel and James swear that they did not know that there was any written agreement between their father and Pratt for the sale of the property, but that all

they know about the matter was that their father had agreed to buy the property, and had paid the amount of the Haight encumbrance on account of the price.

The complainant's counsel urges also that it was the duty of the administrators to sell the contract, in order to raise the money to pay the price, *i. e.*, the $3,000, which remained unpaid. In the first place, they had no right to sell any interest in real estate without the order of the orphans court, and such order could not have been lawfully made. The orphans court is authorized to order the sale of lands, tenements, hereditaments or real estate of a decedent, if necessary to pay his debts. But the land in this case was not the land of the decedent; it was Pratt's property. The court could not order that it be sold. An equitable interest in land under a contract of sale is not within the statute. It may be remarked that it does not appear that the price at which Tobias S. Hendrickson purchased the property was below its value. Some evidence as to its value at that time is to be found in the fact that when he made the agreement he held the property as tenant under Pratt at a rent of $250 a year, from which it would seem that $3,000 would have been a full price for it.

There is another important consideration against the complainant's claim, which should be mentioned before leaving the case, although the decision, as will have been seen, in no wise rests upon it, and that is the great length of time (over twenty years) which elapsed after the complainant came of age before she brought this suit. It is also, in this connection, noteworthy that she never, before bringing it, made any claim upon Samuel and James, or either of them, in respect to the property. And she has lived in Red Bank all her life. There is no ground on which the bill can be sustained. It will be dismissed, with costs.